IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JEREMY A. C., [1]
     Plaintiff,

     v.                          Civil No. 3:21-cv-00007 (HEH)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
     Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was thirty-nine years old at the time of his benefits application and last worked as a firefighter. (R. at 207, 230.) Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine, lumbar radiculopathy, depression, and sciatic nerve damage. (R. at 145, 229.) He alleges that he is unable to perform any of his past relevant work. (R. at 229.)

On August 18, 2020, an Administrative Law Judge ("ALJ") found Plaintiff was not disabled under the Act. (R. at 1066-82.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2] After exhausting his administrative remedies, Plaintiff now

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth),

seeks review of the ALJ's decision. Having reviewed the parties' submissions and the entire record in this case, and for the reasons set forth below, the Court RECOMMENDS Plaintiff's Motion for Summary Judgment (ECF No. 25) and Motion to Remand (ECF No. 26) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 28) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff initially filed for Social Security benefits claiming disability as of November 12, 2012 due to major depression, permanent sciatic nerve damage, degenerative disc disease in his lower back and neck, and a neck spinal fusion. (R. at 207-08, 229.) Plaintiff then amended the alleged onset date of disability to May 12, 2015 following a decision by a previous ALJ denying his application for benefits. (R. 71.) He protectively filed an application for disability benefits on September 14, 2016. (R. at 207-08.)

The Social Security Administration ("SSA") initially denied Plaintiff's claim on February 24, 2017, and again upon reconsideration on March 21, 2017. (R. at 171-175, 179-181.) At Plaintiff's written request, the ALJ held a hearing on October 4, 2017 where Plaintiff appeared with counsel. (R. at 66.) On April 2, 2018, the ALJ issued a written opinion, denying Plaintiff's claim for benefits between May 12, 2015 (the date of onset) and December 31, 2017 (the date last insured). (R. at 13, 26.) On December 22, 2018, the SSA Appeals Council denied Plaintiff's request for review. (R. at 1–4.)

---

and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

Plaintiff filed suit and the Court granted the Commissioner's voluntary Motion to Remand. (R. at 1120-26). On remand, the ALJ held a hearing on April 27, 2020. (R. at 1094-1112). Plaintiff, again represented by counsel, testified at the hearing along with a vocational expert. (R. at 1094-1112.) On August 18, 2020, the ALJ issued a decision finding Plaintiff not disabled between May 12, 2015 (the date of onset) and December 31, 2017 (the date last insured). (R. at 1069-82.) On December 8, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1060-64). Plaintiff now seeks judicial review pursuant to 42 U.S.C. section 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the [SSA's] "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at

3

472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most that the claimant can do despite his physical and mental limitations. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 416.920(a)(4)(v).

### III. FACTUAL BACKGROUND

In rendering the decision to deny Plaintiff's disability claim, the ALJ considered Plaintiff's background, medical evidence, and testimony.

**A.  Plaintiff's Background.**

Plaintiff has a high school degree, completed two years of college, and previously worked as a bank teller, delivery driver, equipment operator, and firefighter. (R. at 229-230.) He has been unemployed since November 2012 and claims he cannot work due to major depression, permanent sciatic nerve damage, degenerative disc disease in his lower back and neck, and spinal fusion in his neck. (R. at 229.) Plaintiff was forty years old on his date last insured. (R. at 145.)

**B.  Medical Evidence.**

Plaintiff has a history of low back and neck pain dating before his alleged amended onset date. In May 2014, Plaintiff was prescribed medication—oxycodone and tramadol—for his low back pain. (R. at 329-30, 691-96.) In August 2014, Plaintiff reported using a cane for walking as needed while also stating walking was painful with the inability to walk more than a quarter mile. (R. at 805.) Plaintiff further reported pain in his neck and constant pain when sitting, standing, or walking. (R. at 706.) Plaintiff had a lumbar MRI on January 7, 2015, which revealed a disc herniation at L4-5 and L5-S1. (R. at 692.) As a result, Plaintiff underwent lumbar hemilaminectomies with micro-discectomies to repair herniated discs, neuroforaminal stenosis, and compression at the herniated discs, which was performed by William Broaddus, M.D., Ph.D. ("Dr. Broaddus") (R. at 608, 643-44.)

In April 2015, Plaintiff reported back pain and weakness and numbness in his legs after removing a tree from his father's driveway. (R. at 592.) On April 1, 2015, Plaintiff reported stiffness in his lumber spine but stated that his pain was improving and that he no longer took Percocet. (R.

at 322, 1076.) On April 23, 2015 Plaintiff's MRI showed his L5 was improving but indicated a possible recurrent herniation at L4-5. (R. at 593-602.)

On June 22, 2015, which is after Plaintiff's alleged onset date, Plaintiff had a cervical MRI, which showed a herniation at C3-4. (R. at 581-83.) Medications and conservative measures did not relieve the pain. Subsequently, Plaintiff underwent a cervical spine discectomy on June 30, 2015. (R. at 514-16.) Plaintiff continued to experience pain in his lumbar spine and left leg, which interfered with his daily activities and resulted in a redo discectomy on August 19, 2015. (R. at 441-42.) However, Plaintiff reported no worsening back pain or numbness, tingling, or weakness in his lower extremities. (R. at 430, 432-33.) Plaintiff also exhibited a normal range of motion throughout the musculoskeletal system. (R. at 432, 1076.) He next reported pain in September and November 2015. (R. at 397, 415.) An MRI on November 16, 2015 showed the resolution of Plaintiff's L4-5 herniation but a disc protrusion and enhancement at the L5-S1 level. (R. at 409.) Dr. Broaddus recommended continued conservative management and prescribed Gabapentin; Dr. Broaddus also reported that Plaintiff could stand and walk with mild evidence of pain yet had a slight decrease in left plantar flexion. (R. at 397-98.)

In January 2016, Plaintiff exhibited "full strength, intact reflexes and sensation, and normal gait." (R. at 317.) Plaintiff began seeing Jawad Bhatti, M.D. ("Dr. Bhatti") for pain management between May and October 2016, and he was prescribed opioid pain-reliving therapy and a nerve block. (R. at 337-51.) Plaintiff returned to Dr. Broaddus in fall 2016, where he reported the medication reasonably controlled his pain and gave him the ability to walk and stand without difficulty. (R. at 370, 386-87.) On October 24, 2016, Plaintiff's MRI showed peridural fibrosis at L4-5 and a herniated sic at L5-S1, which caused left radiculopathy. (R. at 386-88.) A month later on November 29, Plaintiff underwent a revision surgery for the L4-5 posterior lumbar discectomy.

(R. at 725, 741.) A few days later, Plaintiff presented to the emergency room and was found unable to stand from a seated position. (R. at 944.)  Plaintiff had an MRI on December 3, 2016, which revealed degenerative and postsurgical changes at L5-S1, including a "crowding of distal neve roots" due to thecal sac narrowing. (R. at 914.) Plaintiff reported constant pain in his left buttock and posterolateral hip/thigh with reduced back and hip mobility and weakness. (R. at 1025.)

In January 2017, Plaintiff reported to his primary care physician that although his pain was moderate, he was unable to walk more than a quarter mile and continued to experience low back pain. (R. at 1008, 1016, 1200.) Plaintiff stated that sitting aggravated his pain, which greatly diminished his ability to engage in hobbies and interests due to the pain and associated medication side effects. (R. at 252, 1012-17.) This continued into February 2017, when Plaintiff reported significant backpain while sitting or performing an activity. (R. at 1032.) Plaintiff used a cane but was found to be neurologically intact, as were Plaintiff's "sensation, cranial nerves, and deep tendon reflexes." (R. at 1033.) Dr. Broaddus stated Plaintiff should continue efforts, including physical therapy, to advance his activities while Dr. Bhatti treated Plaintiff for pain management between February and April 2017. (R. at 1033, 1043-45, 1047, 1054.) In April 2017, Plaintiff reported that his severe lower back pain persisted though medication reduced the pain level from 8-10 to 4-6. (R. at 1054.) Plaintiff stated that he has used a walker and cane since December 2016, per his doctor's orders. (R. at 98, 254.) In January 2018, Plaintiff requested a referral to a new pain management doctor due to insurance reasons. (R. at 1192.) Plaintiff did not treat with Dr. Broaddus again until August 2018. (R. at 1228-29.)

### C.  Plaintiff's Testimony.

Plaintiff testified at his hearing before the ALJ on April 27, 2020. (R. at 1094-1112.) Plaintiff testified that after his last back surgery, his back pain did not improve, but worsened,

causing him "to go back to the hospital the day after they released me because I lost all feeling and movement of my left arm and leg." (R. at 1102.) Plaintiff then told the ALJ that he was issued a walker and cane for balance and ambulation due to the unresolved back pain. (R. at 1102-03.) He testified that for the three months preceding the hearing, he has not been taking his medication as prescribed because was experiencing negative side effects. (R. at 1103.) He relayed that he suffered from pain every day, which affected his ability to concentrate and perform activities. (R. at 1104.) Although he attempted to do one round of physical therapy, he found it was not successful, and instead opted to treat with a pain management doctor. (R. at 1104.) Finally, Plaintiff testified that he felt his depression continues to be managed effectively with medication. (R. at 1105.)

### D.  Vocational Expert's Testimony.

The ALJ also heard testimony from a vocational expert. (R. at 1105-11.) The vocational expert discussed Plaintiff's previous employment as a firefighter, heavy equipment operator, and furniture delivery driver. (R. at 1106-07.) The ALJ then questioned the vocational expert regarding hypothetical situations of a person with the same age, education, and limited exertion and duration of continuous work levels. (R. at 1107.) The vocational expert testified that Plaintiff would not be able to perform his past work but could perform the requisite duties of an assembler at the sedentary end skill level or a surveillance system monitor. (R. at 1107-08.) The vocational expert also testified that these example jobs do not require the use of a cane to ambulate. (R. at 1108.) Lastly, in response to hypothetical questions from Plaintiff's attorney, the vocational expert testified that needing a cane for balance and ambulation eliminates all competitive employment. (R. at 1110-11.) Additionally, the vocational expert testified that requiring leniency when pain causes someone like Plaintiff to be off task more than ten percent of the time would make performing the above two jobs difficult. (R. at 1110-11.)

## IV. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 1069-83); 20 C.F.R. § 404.1520(a)(4); *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ found that Plaintiff had not worked between his alleged onset date and his date last insured. (R. at 1072.) At step two, the ALJ found that Plaintiff's severe impairment included degenerative disc disease of the cervical and lumbar spines, lumbar radiculopathy, and obesity. (R. at 1072.); *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that equaled the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1074.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 1075.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform sedentary work with the following restrictions:

> [Plaintiff] can occasionally reach overhead bilaterally; occasionally climb ramps or stairs, but can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can never tolerate exposure to vibration and hazards (unprotected heights and moving mechanical parts); is limited to unskilled work due to pain; and requires the use of a cane to ambulate.

(R. at 1075.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with the regulations. (R. at 1075.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff is unable to perform any past relevant work as actually or generally performed. (R. at 1079.) At step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform. (R. at 1080.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as assembler and surveillance-system monitor. (R. at 1080-81.) Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (R. at 1081.)

## V. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled" and contends four issues warrant remand. First, Plaintiff claims that the ALJ erred in her residual functional capacity analysis by not accounting for Plaintiff's limitations in concentration, persistence, and pace. (Pl.'s Mem. Supp. Mot. Summ. J. 4, ECF No. 27 ("Pl.'s Mem.").) Second, Plaintiff avers that the ALJ insufficiently considered Plaintiff's pain because the ALJ "omitted material evidence from her pain analysis" and drew unreasonable inferences from the cited evidence. (Pl.'s Mem. at 6.) Third, Plaintiff argues the ALJ "erred by failing to account for [Plaintiff's] need for a cane for balancing. (Pl.'s Mem. at 10.) Fourth, Plaintiff asserts the ALJ erred by "failing to find that [Plaintiff] was disabled for at least a closed period ending within a reasonable time after his second redo lumbar discectomy." (Pl.'s Mem. at 11.) For the reasons that follow, this Court finds that the ALJ did not err, and substantial evidence supports the ALJ's decision.

**A. The ALJ Reasonably Accounted for Plaintiff's Limitations in Concentration, Persistence, and Pace in Her Residual Functional Capacity Assessment.**

Plaintiff's challenge to the ALJ's residual functional capacity assessment with regards to Plaintiff's ability to concentrate, persist, and maintain pace is two-fold. First, he argues that the ALJ "erred by failing to account for a moderate limitation in [concentration, persistence, and pace], which [Plaintiff] certainly does have." (Pl.'s Mem. at 5.) Second, Plaintiff contends that because he has a moderate limitation in this area, the ALJ was legally required by *Mascio v. Colvin* to include a specific limitation regarding his ability to stay on task in the residual functional capacity. (Pl.'s Mem. at 8.)

In response, Defendant clarifies that the ALJ found Plaintiff had only a *mild* limitation in his ability to concentrate, persist, and maintain pace, and substantial evidence supports the ALJ's decision not to find Plaintiff moderately limited in this functioning area. (Def.'s Mot. Summ. J., 11 (ECF No. 28) ("Def.'s Mem.").) Accordingly, Defendant distinguishes *Mascio* from the present matter "because the ALJ in *Mascio* failed to account for the claimant's **moderate** limitations . . . not **mild** limitations as in the case at bar." (Def.'s Mem. at 11 (emphasis in original).) Moreover, even if Plaintiff was assessed with a moderate limitation in this functioning area, Defendant argues that the ALJ fully accounted for the impact of Plaintiff's pain on his ability to maintain concentration, persistence, and pace by limiting Plaintiff to unskilled work and sufficiently articulating how the evidence supported her finding. (Def.'s Mem. at 12.)

    *1. Legal Standard.*

As an initial matter, there is no requirement that a finding of "mild" difficulty in concentration, persistence, or pace must translate to a correlating limitation in the residual functional capacity assessment. *Cf.* 20 C.F.R. § 404.1520a(d) (limitation of none or mild is

generally considered not severe); *Brooks v. Berryhill*, No. 3:15-CV-00440-RJC, 2017 U.S. Dist. LEXIS 46724, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017) (holding that "*Mascio* dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of residual functional capacity.). *See also Walker v. Berryhill*, No. 5:17-CV-00090-FDW, 2018 U.S. Dist. LEXIS 18050, at *9 (W.D.N.C. Feb. 5, 2018); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (noting that "moderate" limitation in concentration, persistence, or pace at step three of the sequential evaluation may not translate into a residual functional capacity limitation in every case).

### 2. *Substantial Evidence Supports the ALJ's Determination that Plaintiff has a Mild Limitation in Maintaining Concentration, Persistence, or Pace.*

In the present case, unlike in *Mascio*, the Court is not "left to guess about how the ALJ arrived at [her] conclusions." *Mascio*, 780 F.3d at 637. Indeed, the ALJ provided ample evidence, explanation, and detail regarding each of her limitation findings. (R. at 1073-74.) Regarding the mild restriction in concentration, persistence, or pace, the ALJ found Plaintiff experienced problems due to pain and side effects from his medication, but was able, nonetheless, to "maintain concentration to read sports articles and current events, as well as complete crossword puzzles." (R. at 1073.) The ALJ noted that Plaintiff helps his daughters with homework and chores, goes fishing, and typically finishes what he starts, such as conversations, chores, and reading. (R. at 1073.) Further, the ALJ noted that Plaintiff described being able to pay attention for thirty to forty-five minutes at a time. (R. at 253, 1073.)

Moreover, treatment notes did not reveal any significant cognitive or memory problems, and consultative examiners routinely found Plaintiff to have little to no difficulties in this functioning area. For example, state agency consultant Dr. Stephanie Fearer, whose opinions the ALJ considered to be persuasive, noted that Plaintiff's activities of daily living showed that he was

independent in his activities, and that his mental health impairments were non-severe. (R. at 151.) She reasoned that Plaintiff was able to care for his children, attend classes four days per week, drive, shop, use a computer daily, manage his own finances and personal needs, and "does not need reminders to go places, nor does he need anyone to accompany him when he goes out." (R. at 159.) Similarly, the ALJ found the opinions of state agency examiners Dr. Bert Spetzler and Dr. Paula Nuckols to be generally persuasive. (R. at 1078.) Both doctors found Plaintiff to be "mostly independent in his [activities of daily living] . . . ." (R. at 152, 165, 1078.)

The ALJ found that Plaintiff did not have difficulties in following instructions, noting that he endorsed being able to follow both written and spoken instructions "very well" in his function report. (R. at 253.) The ALJ thoroughly articulated Plaintiff's activities of daily living, which demonstrated Plaintiff's ability to concentrate, persist, and maintain pace. (R. at 1073, 1078.) Although Plaintiff relayed that his ability to maintain concentration and focus was hindered by constant pain, he explained in his function report that he was able to do his laundry, go grocery shopping, kept his room clean, and helped his daughters get ready for school every day. (R. at 248, 253, 1104.) He also denied having any difficulty with maintaining his personal care. (R. at 249.)

In short, the ALJ's thorough discussion of Plaintiff's limitation demonstrate that substantial evidence supports her findings that Plaintiff is mildly limited in his ability to concentrate, persist, or maintain pace. Plaintiff has not pointed to evidence (medical opinion or otherwise) to suggest that he had more than mild difficulties with regard to concentration, persistence, or pace, but simply suggests that "pain as severe as that [which limits one to unskilled work] would certainly limit, at least moderately, [Plaintiff's] ability to stay on task." (Pl.'s Mem. at 5.) Such speculation is insufficient to carry Plaintiff's burden, and the Court declines to engage in a re-weighing of the

medical opinions or other evidence. Accordingly, there is no error in the ALJ's assessment that Plaintiff is mildly limited in his abilities to concentrate, persist, or maintain pace.

### 3. The ALJ's Residual Functional Capacity Reasonably Accounted for Plaintiff's Mild Limitations in Concentrating, Persisting, or Maintaining Pace.

As part of his second challenge to the ALJ's residual functional capacity assessment with regards to difficulties in concentrating, persisting, or maintaining pace, Plaintiff contends that the ALJ inadequately accounted for his limitations in this area in accordance with the Fourth Circuit's holding in *Mascio*. However, the Court agrees with Defendant, that while Plaintiff couches his argument as derived from *Mascio*, Plaintiff's challenge is more accurately characterized as an attack on the ALJ's evaluation of the medical evidence. Indeed, Plaintiff objects to the ALJ's failure to account for a restriction beyond unskilled work because he asserts, without evidence, that he had a moderate limitation, rather than a mild one. (Pl.'s Mem. at 5.)

Contrary to Plaintiff's arguments, the ALJ's residual functional capacity determination is supported by substantial evidence, and her discussion of Plaintiff's capacity for concentration, persistence, or pace satisfies the Fourth Circuit's holding in *Mascio*, 780 F.3d at 638. The ALJ found that Plaintiff has the residual functional capacity "to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant . . .  can never tolerate exposure to vibration and hazards . . . [and] is limited to unskilled work due to pain . . . ." (R. at 1075.) The ALJ specifically determined that Plaintiff "has no more than a mild limitation in concentrating, persisting, or maintaining pace." (R. at 1073.)

The ALJ engaged in a detailed discussion when determining Plaintiff's residual functional capacity, noting, for example, that Plaintiff is able to pay attention for thirty to forty-five minutes at a time, "typically finishes what he starts," reads regularly, and completes crossword puzzles. (R. at 1073.) When determining Plaintiff's residual functional capacity, the ALJ specifically

14

"accounted for the claimant's ongoing and consistent reports of pain by limiting him to no more than unskilled work." (R. at 1078.)

Therefore, the ALJ assessed Plaintiff's limitations concerning concentration, persistence, and pace as mild. (R. at 1073.) Unlike the ALJ in *Mascio*, who found that the claimant possessed moderate limitations regarding concentration, persistence, or pace, and who did not explain why he did not incorporate those limitations into the residual functional capacity determination, there is no inconsistency here between the ALJ's assessment of Plaintiff's concentration, persistence, or pace with the ALJ's determination of Plaintiff's residual functional capacity. 780 F.3d at 638. Here, the ALJ explained why she found that Plaintiff suffered only mild limitations regarding concentration, persistence, or pace, and the ALJ articulated that when she limited Plaintiff to unskilled work. Therefore, there is no evidence suggesting that the ALJ failed to consider Plaintiff's pain and its subsequent effects on his abilities to concentrate, persist, or maintain pace. Accordingly, the ALJ's analysis was not inconsistent with *Mascio*, and substantial evidence supports her residual functional capacity determination.

**B.  The ALJ Sufficiently Considered Plaintiff's Subjective Complaints of Pain.**

Plaintiff next challenges the ALJ's findings by arguing that the ALJ selectively chose "facts concerning the intensity and degree of [Plaintiff's] pain" and drew improper inferences from the record. (Pl.'s Mem. at 6.) For example, Plaintiff points to a treatment record from February 2017, in which Plaintiff's provider noted that he "did well initially, but then required readmission for recurrent severe left leg pain." (R. at 1032.) While the ALJ cited to this statement in her discussion of the medical evidence, Plaintiff alleges that, in doing so, she omitted "several pieces of evidence favorable to [Plaintiff]," such as the rest of those treatment notes. (Pl.'s Mem. at 7.) Defendant responds that the ALJ was not required to mention "each and every reference to [Plaintiff's]

reported pain contained in the record" and that the ALJ fairly characterized Plaintiff's pain in her assessment. (Def.'s Mem. at 15.)

### 1. *Legal Standard.*

When assessing a claimant's residual functional capacity in situations where a claimant alleges disabling pain, the ALJ conducts a two-step *Craig* analysis. 20 C.F.R. § 404.1529(b); *see Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ first determines whether "objective medical evidence presents a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (internal citations and quotations omitted). The ALJ does this by discussing the "claimant's functional limitations discernable from the relevant evidence in the record" and by "examin[ing] the relevant evidence in the record, determin[ing] from that evidence whether the claimant has any functional limitations, and, if any functional limitations are found, factors those limitations into the residual functional capacity assessment." *Deloatch v. Comm'r of Soc. Sec.*, 2009 WL 2475260 (E.D. Va. Aug. 10, 2009) (internal citation omitted). Once the ALJ has found a medically determinable impairment, she then "asses[es] the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Arakas*, 983 F.3d at 95.

The ALJ is not required to discuss all evidence in the record. *See e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Indeed, "[t]o

require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4. Rather, the ALJ must "provide [this court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

### 2. *The ALJ's Analysis.*

At step one of the *Craig* analysis, the ALJ examined Plaintiff's medical history and found that his medically determinable impairment of degenerative disc disease and cervical radiculopathy could reasonably be expected to cause his alleged symptoms. (R. at 1075-76.) At step two, the ALJ outlined Plaintiff's medical history and noted objective medical findings that support her conclusion. In January 2015, Plaintiff had left L4-5 and L5-S1 discectomies, a C3-4 anterior discectomy and fusion in June 2015, and surgery for recurrent L4-5 disc herniation in August 2015. (R. at 1230, 1223.) A January 2016 x-ray of Plaintiff's cervical spine showed evidence of the surgery with no apparent hardware failure. (R. at 664.) An MRI in October 2016 showed mild multilevel degenerative change with moderate epidural lipomatosis, moderate canal stenosis at L3-L4, and mild left and moderate right foraminal stenosis at L5-S1. (R. at 386-88.) Plaintiff underwent surgery for recurrent L5-S1 disc herniation in November 2016. (R. at 1223.) An updated MRI of the lumbar spine in December 2016 showed evidence of the surgery and "normal alignment of the lumbar spine." (R. at 875.) Plaintiff underwent lumbar spine surgery in January 2018. (R. at

725.) In August 2019, a CT of the cervical spine showed a fusion at C3-4 "which is solid," and a slight kyphotic angulation at C4-5, but widely patent canal and neural foramina. (R. at 1240.)

In addition to the objective evidence, the ALJ also considered Plaintiff's subjective reports of pain. Plaintiff consistently reported back pain in his medical records and adult function report, noting that the pain interfered with his activities. (R. at 252-53, *see generally* R. at 1192, 2218, 1223, 1230, 1239 *sic passim*.) He began physical therapy for his neck but discontinued when his low back pain worsened. (R. at 983, 1013.) Plaintiff returned to physical therapy on September 12, 2016 to treat for neck and low back pain caused by a car accident on August 24, 2016, and was notably progressing well. (R. at 1015, 1078-80.)

In February 2017, Plaintiff reported that his symptoms improved "somewhat" although he "continues with significant back pain . . . related to any period of sitting or activities." (R. at 1032.) He also told his provider that he did "not have pain in the legs unless he increases his level of activities." (R. at 1077, citing R. at 1032.) His provider went over the MRI taken when Plaintiff was readmitted following surgery, and explained to Plaintiff that it showed postoperative changes, but no other major problems. (R. at 1033.) The ALJ also cited to Plaintiff's follow-up appointment in March 2017. (R. at 1077.) At that appointment, Plaintiff complained of chronic pain to the back, but that his medications were helping, and his activities of daily living were improving. (R. at 1043.)

The ALJ found that the evidence showed Plaintiff's symptoms improved with pain medication and his functioning improved with physical therapy. (R. at 1072-80.) Plaintiff reported at his appointments that he was able to manage his symptoms and pain with treatment and medication. (R. at 1072, 1077.) She noted that the cervical fusion "appears to have resolved the claimant's neck pain and preserved the range of motion in the cervical spine in his upper extremities." (R. at 1078.) Nonetheless, the ALJ accounted for this impairment "by restricting the

claimant's overhead reaching." (R. at 1078.) Additionally, the ALJ accounted for Plaintiff's ongoing and consistent reports of pain by limiting him to no more than unskilled work." (R. at 1078.) This was consistent with the opinions of the state agency physicians, noted above, which the ALJ regarded as generally persuasive, as they reported that Plaintiff could perform at the sedentary exertional level with the limitations that he could occasionally climb ramps, ladders, and scaffolds, occasionally stoop, kneel, crouch, and crawl, and frequently balance. (R. at 153 166, 1078.)

*3. The ALJ's Evaluation of Plaintiff's Subjective Complaints Was Not in Error.*

In this case, the ALJ did not err when she examined and considered both objective medical evidence and Plaintiff's subjective complaints of pain. Unlike the claimant in *Arakas*, Plaintiff has an impairment that produces objective medical evidence. *See* 20 C.F.R. § Pt. 404, Subpt. P, App 1, 1.00(C)(1) (In establishing that a claimant has a musculoskeletal disorder, including disorders of the spine, the [SSA] "need[s] objective medical evidence from an acceptable medical source.") The ALJ, therefore, properly considered both Plaintiff's statements about his pain, which Plaintiff claimed improved with pain medication, and "all the available evidence, including the claimant's medical history, medical signs, and laboratory findings." (R. at 1075-79); *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996); *see also* 20 C.F.R. § 416.929 ("In evaluating the intensity and persistence of . . . symptoms, including pain, [the ALJ] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the] symptoms affect [the claimant].")

The ALJ's approach accords with the approach to back pain that many courts in the Fourth Circuit have taken post-*Arakas*. *See Gardner v. Kijakazi*, No. 7:20-CV-124, 2021 WL 3465076 at *6–7 (E.D.N.C. Aug. 6, 2021) (affirming the ALJ's decision that the objective medical evidence did not support claimant's subjective reports of disabling back pain); *Mark S. v. Saul*, No. 7:19-

CV-740, 2021 WL 189149 at *5–8 (W.D. Va. Jan 19, 2021) (holding that the ALJ did not err in finding that the objective medical evidence was inconsistent with claimant's report of severe back pain that had no clinical indication of a cause); *Allen v. Saul*, No. 3:20-CV-00291, 2021 WL 955575 at *11 (S.D.W. Va. Feb. 23, 2021) (holding that the ALJ correctly considered claimant's back pain under 20 C.F.R. § 416.929 by examining claimant's statements about his pain in light of the objective medical evidence). *But see Lafitte v. Saul*, No. 1:20-cv-163, 2021 WL 681102, at *9–10 M.D.N.C. Feb. 22, 2021) (holding that the ALJ inappropriately increased claimant's burden of proof by requiring objective medical evidence to substantiate her subjective claims of back pain).

Here, the ALJ's summary of Plaintiff's medical record, the opinion evidence, and Plaintiff's subjective complaints "enable[s] . . . [this court] to conclude that [the ALJ considered [Plaintiff's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ explicitly referenced Plaintiff's treatment records and acknowledged that Plaintiff did, indeed, suffer pain to the extent that he is unable to work at a higher exertional level than sedentary, unskilled work. "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . . .[the ALJ] is not required to function as the claimant's substitute counsel . . . ." *Bell v. Chater*, No. 95-1089, 1995 U.S. App. LEXIS 14322, at *12, 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished table decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)) (internal citations and quotations omitted). Ultimately, Plaintiff carries the burden of establishing a prima facie entitlement to benefits and bears the risk of non-persuasion. *Id.* (internal citations and quotations omitted); *see also* 20 C.F.R. § 404.1512(c) ("[Claimant] must provide evidence . . . showing how the impairment(s) affects . . . functioning . . . .").

Indeed, this Court's review of the ALJ's decision reveals that the ALJ considered the evidence as a whole and made her credibility determination accordingly. This Court does not agree with Plaintiff that the ALJ failed, in accordance with the regulations, to consider the extent of Plaintiff's pain simply because she did not refer to specific portions of the records which Plaintiff believes to be more favorable to him. As Defendant correctly points out, the ALJ was under no duty to discuss or provide a written evaluation of every piece of evidence in making her credibility determination. In fact, Plaintiff concedes this point later in his brief, noting that the ALJ is under no duty to "identify every single scrap of testimony that she thinks lacks credibility." (Pl.'s Mem. at 11.)

Even though Plaintiff may be able to point to selective evidence in support of a finding of greater limitations, he has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence. *See Owens v. Colvin,* 2014 WL 7043215, at *4 (D.S.C. Dec. 12, 2014); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("The fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of [the Act] precludes *a de novo* judicial proceeding and requires that the court uphold the [Commissioner]'s decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). "Simply because the [claimant] can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment." *Owens,* 2014 WL 7043215, at *4. Therefore, this Court finds that the ALJ did not err in her evaluation of Plaintiff's subjective complaints of pain.

### C. The ALJ Appropriately Accounted for Plaintiff's Use of an Assistive Walking Device in her Residual Functional Capacity Assessment.

Plaintiff's next assignment of error is that the ALJ failed to account for Plaintiff's need to use a cane to balance. (Pl.'s Mem. at 10.) In support, Plaintiff points to his own testimony regarding his use of a cane and walker for balance and stability, recounting that his occupational therapist

recommended it, and that the vocational expert testified it would render him unable to work.  (Pl.'s Mem. at 10.) In response, Defendant argues that the ALJ's residual functional capacity assessment "directly acknowledges and accounts for Plaintiff's need for a cane to the extent supported by the record," and that "[n]o further cane-related limitation is necessary here." (Def.'s Mem. at 17.)

### 1. *Legal Standard.*

When formulating an assessment of residual functional capacity, an ALJ must "consider the impact of 'medically required' hand-held assistive devices." *Fletcher v. Colvin*, No. 1:14CV380, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (citing SSR 96–9p, 1996 WL 374185 (July 2, 1996)). For instance, use of a hand-held assistive device, such as a cane or walker, may limit a claimant's residual functional capacity "by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). However, only devices that are "medically required" need to be considered by the ALJ when making the residual functional capacity assessment. *Fletcher*, 2015 WL 4506699, at *8 (*quoting* SSR 96-9p, 1996 WL 374185 (July 2, 1996)).

For an assistive device to be "medically required," the claimant must present medical documentation: (1) supporting his need for an assistive walking device; and (2) describing the circumstances that require it. SSR 96–9p, 1996 WL 374185, at *7. Neither a prescription for a cane, nor the lack thereof, necessarily determines whether the claimant medically requires an assistive device. *Fletcher*, 2015 WL 4506699, at *8 (citing *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009)). If the claimant fails to supply appropriate documentation, the ALJ need not include the

use of an assistive walking device in the residual functional capacity assessment. *Fletcher*, 2015 WL 4506699, at *8.

      *2. Analysis.*

The ALJ noted that Plaintiff testified at his 2020 hearing that he had a prescription for a cane, used a cane on occasion by "at least late 2015," and was seen using a cane in February 2017. (R. at 1077.) Additionally, she explained that Plaintiff claimed in July 2017 that he was using a cane for short distances and a walker for long distances. (R. at 1077, citing R. at 1033, 1196.) In crafting her residual functional capacity, the ALJ noted the absence of a medical opinion recommending Plaintiff's continued use of a cane. (R. at 1078.) However, she acknowledged that the record reflected evidence that Plaintiff used a cane to ambulate, despite often exhibiting normal gait and having no limitations in his mobility or to his activities of daily living. (R. at 1077, citing R. at 507, 731, 962, 1043, 1265.) Therefore, the ALJ provided a limitation to address Plaintiff's use of a cane to ambulate "due to [Plaintiff's] extensive history of lumbar surgery, obesity, and ongoing chronic pain." (R. at 1078.)

In this case, there is no indication in the record that Plaintiff presented medical documentation supporting his need for a cane to balance, other than his testimony at his 2017 hearing that he uses a shopping cart for balance "so that [he doesn't] have to depend on the cane so much." (Pl.'s Mem. at 10, citing R. at 97.) Although Plaintiff does not point to other evidence demonstrating his need to use a cane for balance, he nonetheless alleges that the ALJ erred by failing to: (1) address his statement; and (2) articulate why it was not credible. (Pl.'s Mem. at 10-11.) While Plaintiff acknowledges that the ALJ need not "identify every single scrap of testimony that she thinks lack credibility," he nonetheless argues that the ALJ must do so here because "the claimant's testimony is dispositive . . . ." (Pl.'s Mem. at 11.) The Court disagrees. Plaintiff did not

meet his burden of showing that a cane was "medically required" for balance as set forth in SSR 96-9p, and substantial evidence supports the ALJ's determination to account for it for ambulation purposes. Notably, the ALJ limited Plaintiff to the ability to "occasionally balance," while also assessing him the requirement that he use a cane to ambulate. (R. at 1075.) What Plaintiff seeks, essentially, is for this Court to determine that the ALJ had a duty to address Plaintiff's use of a cane for balancing to give determinative effect to the vocational expert's opinion that such a need would render Plaintiff unable to work. The Court declines to do so and finds the ALJ did not err in her assessment of Plaintiff's need of a cane to ambulate.

### D.   The ALJ Did Not Err by Finding Plaintiff Not Disabled from May 12, 2015 through November 2016.

Lastly, Plaintiff argues that the ALJ should have found him disabled during the time he underwent various back surgeries because he was presumably "in such intractable, severe pain that his only option was to undergo four surgeries." (Pl.'s Mem. at 11.) In response, Defendant contends that the ALJ's residual functional capacity analysis encompassed all the evidence available on record, which does not support greater limitations. (Def.'s Mem. at 20-22.)

As summarized above, the ALJ sufficiently articulated her reasons for finding that Plaintiff could perform sedentary, unskilled work, and considered his lower back condition and pain when formulating restrictions. *See supra* Part V.B. The ALJ specifically cited to Plaintiff's lumbar discectomy in January 2015, anterior cervical discectomy and fusion procedure in June 2015, and two revision discectomies in August 2015 and November 2016. (R. at 1076.)

In her analysis of Plaintiff's surgeries, the ALJ cited to Plaintiff's follow-up treatment progress notes and pain management. (R. at 1076.) She noted, for example, that Plaintiff followed up with his surgeon in late August 2015, a few weeks after undergoing a revision of his L4-L5, and "denied any worsening back pain, lower extremity weakness, numbness, or tingling." (R. at 1076,

24

citing R. at 432-33.) "He presented with normal range of motion throughout the musculoskeletal system, as well as normal neurological findings." (R. at 1076, citing R. at 432.) He also "demonstrated full 5/5 bilateral upper and lower extremity strength." (R. at 1076, citing R. at 433.) At another visit in November 2015, Dr. Broaddus found that Plaintiff could "stand and walk with mild evidence of pain," and had intact and symmetric sensory testing, despite a slight decrease in left plantar flexion. (R. at 1076, citing R. at 397-98.) Dr. Broaddus recommended that Plaintiff continue with conservative management, and by January 2016, Plaintiff exhibited full strength, intact reflexes and sensation, and normal gait. (R. at 1076-77, citing R. at 317.)

Plaintiff petitions this Court to find error with the ALJ's decision not to find him disabled during the relevant period and suggests that undergoing multiple surgeries during this time frame raises a presumption that he was in such pain as to be completely disabling. (Pl.'s Mem. at 11.) However, multiple surgeries alone are not enough to prove a prolonged disability when there is evidence that symptoms have improved even if the underlying condition remains. *Foster v. Colvin*, 2013 U.S. Dist. LEXIS 94469, 2013 WL 3448036, at *2 (D. Md. July 5, 2013). If, between operations, the symptoms are "correctable so that the [claimant] could return to work," the disability does not persist, even if the underlying condition remains. *Id.*; s*ee also Maher v. Sec'y of Health & Human Servs*., 898 F.2d 1106, 1109 (6th Cir. 1989) ("claimant's hospitalization and periods of recuperation represent distinct and separate periods of disability which cannot satisfy the statutory requirement of continuous disability"). Here, the ALJ cited to Plaintiff's medical records, which indicated that his surgeries followed periods of time in which Plaintiff's back pain improved.

Moreover, the ALJ properly examined the state agency consultants' opinions and thoroughly summarized Plaintiff's treating physician's treatment records. (R. at 1076-78.) Additionally, the ALJ noted Plaintiff's abilities to complete activities of daily living, such as doing

his laundry, going grocery shopping, completing household chores, caring for his personal hygiene, and helping his daughters get ready for school and complete their homework. (R. at 1076.).

Plaintiff's final argument appears to be an invitation to re-weigh evidence that has already been considered and weighed by the ALJ. However, this Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d, 585, 589 (4th Cir. 1996.) Accordingly, the Court finds that substantial evidence supports the ALJ's decision not to find Plaintiff disabled during the period in which Plaintiff underwent his surgeries.

## VI. CONCLUSION

Based on the foregoing analysis, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 25) and Motion to Remand (ECF No. 26) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 28) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and to all counsel of record.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

        /s/

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: <u>June 3, 2022</u>